RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0295P (6th Cir.)
File Name: 03a0295p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ELECTRICAL WORKERS
PENSION TRUST FUND OF
LOCAL UNION #58, IBEW, et
al.,

    *Plaintiffs-Appellants,*

    *v.*

GARY'S ELECTRIC SERVICE
COMPANY,

    *Defendant-Appellee.*

No. 01-1864

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74631—Anna Diggs Taylor, District Judge.

Argued: January 30, 2003

Decided and Filed: August 18, 2003

Before: BATCHELDER, MOORE, and CLAY, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Mark Granzotto, Royal Oak, Michigan, for
Appellant. William L. Hooth, COX, HODGMAN &

GIARMARCO, Troy, Michigan, for Appellee. **ON BRIEF:**
Sheldon M. Meizlish, Detroit, Michigan, Rolland R. O'Hare,
SACHS, NUNN, KATES, KADUSHIN, O'HARE,
HELVESTON & WALDMAN, Detroit, Michigan, for
Appellant. William L. Hooth, Ryan Lee Perry, COX,
HODGMAN & GIARMARCO, Troy, Michigan, for
Appellee.

———————

**OPINION**

———————

KAREN NELSON MOORE, Circuit Judge. This dispute
originated when Defendant-Appellee Gary's Electric Service
Company ("Gary's Electric") violated a collective bargaining
agreement's ("CBA") fringe benefit provisions and then
failed to honor a request for information from Plaintiffs-
Appellants Electrical Worker's Pension Trust Fund of Local
Union #58, International Brotherhood of Electrical Workers,
et al. ("the Funds") regarding the performance of Gary's
Electric's representational duties. The Funds first filed a
grievance with the Labor-Management Committee ("LMC")
based on Gary's Electric's failure to pay fringe benefits,
requesting that the LMC enter an arbitration award ordering
Gary's Electric to file past-due reports, pay past-due
contributions, and thereafter file and pay contributions as they
became due. After the LMC entered the award, the Funds
filed an action in district court to secure Gary's Electric's
compliance with the terms of the award. Upon the Funds'
motion, the district court granted summary judgment in favor
of the Funds. When Gary's Electric appealed, the appeal was
consolidated with a National Labor Relations Board
("NLRB") petition seeking enforcement of an NLRB order
finding that Gary's Electric engaged in unfair labor practices.
A panel of this court affirmed the district court's decision and
enforced the NLRB order. *See Elec. Workers Local 58*

*Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646 (6th Cir. 2000).

Thereafter, the Funds brought contempt proceedings in the district court against Gary's Electric and its owner, Russell Gary Pipia ("Pipia"), alleging that they continually violated the terms of the arbitration award. The district court held a hearing and granted the contempt petition as to Gary's Electric but denied it as to Pipia. The district court explained that, among other reasons, Pipia could not be held in contempt because he was not an actual defendant in the action. The Funds then brought this appeal from the portion of the court's order denying the contempt petition as to Pipia. We **VACATE** the decision of the district court and **REMAND** for additional proceedings consistent with this opinion.

## I. BACKGROUND

Gary's Electric, a Michigan corporation wholly owned by Pipia, was a small electrical service company with primarily residential and small-business customers. In 1976, and again in 1988, Gary's Electric signed a letter of assent authorizing the Southeastern Michigan Chapter of the National Electrical Contractors Association ("NECA") to be its representative for all business matters between NECA and the International Brotherhood of Electrical Workers' Local Union #58 ("the Union").[1] Through its representative, NECA, Gary's Electric entered into a binding CBA with the Union. This CBA required participating employers to pay their employees'

fringe benefits — pension, vacation, unemployment, annuity, and medical — into the Funds.

On August 4, 1998, in accordance with the terms of the CBA, the Funds made a demand to the LMC for arbitration of their grievance, charging that Gary's Electric failed to make its contractual payments into the Funds and failed to submit the required fringe benefit reports. A hearing before the LMC was set for August 20, 1998, and Gary's Electric was given notice. On August 25, 1998, the LMC found Gary's Electric guilty of the charges in the grievance and ordered Gary's Electric to pay the past-due fringe benefit payments, produce the reports, and make future payments when due.[2] An additional award from the LMC, also dated August 25, 1998, found Gary's Electric guilty of failing to secure a surety bond as required by the CBA.

Almost two months later, after Gary's Electric failed to comply with the LMC awards, the Funds filed a complaint in district court requesting that the court enter a judgment enforcing the LMC's awards. On May 18, 1999, the district court granted the Funds' motion for summary judgment, and Gary's Electric immediately filed an appeal.[3] A three-judge

---

[1] The second letter of assent, signed by Pipia as Gary's Electric's president, took effect on July 29, 1988 and stated that it would remain effective until terminated by Gary's Electric supplying NECA and the Union with written notice at least 150 days prior to the agreement's anniversary date. *See Elec. Workers Local 58 Pension Trust Fund*, 227 F.3d at 650.

[2] The arbitration award specifically ordered Gary's Electric to remedy its violation by:

    A.  Submitting the fringe benefit reports due to the date of this decision as required by Article VIII of that Agreement, ***and***

    B.  Immediately paying the amounts shown on those reports as due, including the liquidated damages due thereon, ***and***

. . .

    D.  Hereafter, filing all reports and paying all fringe benefit contributions on a timely basis as required by Article VIII.

Joint Appendix ("J.A.") at 16 (Compl., Ex. C, Award of the LMC).

[3] During the pending appeal, Gary's Electric neither filed a supersedeas bond nor stayed the judgment pending appeal. Thus, the district court "retain[ed] jurisdiction to enforce [its] judgment." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987).

panel of this court heard the consolidated appeal[4] on August 4, 2000, and issued an opinion on September 25, 2000, enforcing the NLRB order and affirming the district court's grant of summary judgment for the Funds. *See Elec. Workers Local 58 Pension Trust Fund*, 227 F.3d at 649.

While Gary's Electric's appeal was pending,[5] the Funds initiated contempt proceedings in district court against Gary's Electric and Pipia for failing to adhere to the district court's orders to pay past-due contributions, disclose fringe benefit reports, adhere to the rules in the CBA for future contributions and reports, secure a surety bond, and pay the Funds their costs and attorney fees.[6] A November 23, 1999 order of the district court temporarily disposed of the Funds' petition for contempt by ordering: (1) Gary's Electric to produce, within one month, the fringe benefit reports from June 1998 through the present date; and (2) Pipia to submit to a deposition within two months. The district court postponed

---

[4] The NLRB's general counsel brought charges against Gary's Electric for failure to provide information relevant to the performance of its representational duties pursuant to Sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"). The administrative law judge ("ALJ") found Gary's Electric guilty as charged, and then the NLRB affirmed the ALJ's decision. The NLRB eventually sought enforcement of its order, and that action was consolidated with Gary's Electric's appeal from summary judgment in the Funds' case.

[5] Gary's Electric ceased functioning as an electrical services company by November 1999, although Pipia and his secretary continued to work up until January 2000 in order to wind up the business's affairs. According to the Funds, Gary's Electric went out of business on November 13, 1999.

[6] The Funds admit that once these contempt proceedings began, Gary's Electric submitted the fringe benefit reports that earlier they were ordered to produce. These reports showed that between May 8, 1998 and October 30, 1999, Gary's Electric owed $247,803.82 to the Funds.

---

its rulings on the other issues contained in the Funds' petition for contempt.

The instant appeal began when the Funds reinitiated the deferred portions of their contempt petition against both Gary's Electric and Pipia.[7] In their motion for rehearing filed on December 7, 2000, the Funds alleged that Gary's Electric, with total disregard for this court's decision, chose not to comply with the district court's judgment — it did not make delinquent payments, produce all the necessary fringe benefit reports,[8] make prospective payments as they became due, or comply with the bond award. According to the affidavit of a Funds employee responsible for monitoring participating employers' payments to the Funds, from the district court's judgment enforcing the LMC awards in May 1999 until October 30, 1999, fringe benefit contributions owed by Gary's Electric amounted to $75,345.04.[9] In the motion, the Funds also allege that Pipia began to waste the corporate asserts in an effort to avoid making the court-required payments. According to the Funds, Pipia starting "stripping

---

[7] In previous briefs to this court, Gary's Electric relied on a September 29, 2000 district court order deciding that the motion for contempt is moot because the court issued an order dismissing the case on November 23, 1999. On October 19, 2000, the district court issued another order vacating the September 29, 2000 order which denied the motion for contempt as moot, and stated that the September order was "erroneously issued." J.A. at 5 (Docket #42).

[8] Gary's Electric eventually produced the reports for May 8, 1998 through October 30, 1999. Nevertheless, they failed to produce any reports for November and December 1999, even though, as the Funds allege, Gary's Electric still employed electrical workers during those months.

[9] The Funds assert that if the time period runs from the date of judgment up until November 13, 1999 when Gary's Electric went out of business, then the amount owed by Gary's Electric in fringe benefits is "some a hundred seven thousand dollars." J.A. at 136 (Tr. of Mot. Hr'g).

the corporation of its assets" after the NLRB and the Funds initiated proceedings against it in late 1998 and early 1999. Appellants' Br. at 8. The evidence supporting the Funds' position that Pipia flagrantly and deliberately disregarded the court's judgment includes: Pipia more than tripling his Gary's Electric salary within two years, Pipia's receipt of large bonuses and loans from Gary's Electric, Pipia's use of funds from a corporate account to purchase a fur coat for his wife which he later claimed as a bonus, and Pipia's directives to pay in full every creditor except for the debt owed the Funds.

At the motion hearing, the Funds requested that Pipia "be ordered to purge himself of contempt by requiring him to pay [to the Funds] the sum of . . . a hundred thousand twelve dollars [and] thirty-eight cents, that being the amount of indebtedness that accrued after [Pipia] was ordered to comply with the fringe benefit provisions of the Collective Bargaining Agreement." J.A. at 141 (Tr. of Mot. Hr'g). Ultimately, the district court granted the contempt petition with respect to Gary's Electric, but denied it without prejudice with respect to Pipia. The district court stated:

> I will at this time enter an order finding the corporation in contempt of the order, the injunctive order of this court because it failed to do what it was ordered to do. I am unable to do that with Mr. Pipia because although you have told me many very reprehensible things that he has done, there are no proofs of that on this record and he was not a defendant in this case and he was not ordered specifically to do anything other than give a deposition which he did do.

J.A. at 153 (Tr. of Mot. Hr'g). The Funds now appeal from the portion of the district court's order denying the petition to hold Pipia in contempt.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction pursuant to §301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, and §§ 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

### B. Standard of Review

A decision on a contempt petition is within the sound discretion of the trial court and thus is reviewed only for an abuse of discretion. *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (quotation omitted), *cert. denied*, 522 U.S. 906 (1997). Under this standard, a district court's decision is to be afforded "great deference;" it "will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).

### C. Contempt

#### 1. Corporate Officers Can Be Held in Contempt

When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). Recognizing that the power "to punish for contempts" should not be used lightly, the Supreme Court has stated that this power "is a necessary and integral part of the

independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. *Cincinnati Bronze*, 829 F.2d at 590. With respect to civil contempt proceedings, "[j]udicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).

In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that "he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Cincinnati Bronze*, 829 F.2d at 591 (quotation and brackets omitted). Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence. *See Consol. Coal Co. v. Local Union No. 1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir. 1975). Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order. *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production."). To meet this production burden in this circuit "a defendant must show categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotation omitted). When evaluating a defendant's failure to

comply with a court order, we also consider whether the defendant "took all reasonable steps within [his] power to comply with the court's order." *Peppers*, 873 F.2d at 969.

In the present case, the Funds petitioned for a contempt order against both Gary's Electric and its principal officer and owner, Pipia. The district court granted the motion for Gary's Electric but denied the motion for Pipia. The district court identified three reasons for dismissing the contempt motion with respect to Pipia. First, the district court noted that Pipia could not be held in contempt because he was not a defendant in the lawsuit. Second, the court focused on the terms of the original order and stated that the only act Pipia was specifically and individually ordered to do was to submit to a deposition and that he complied in full. Third, the district court reasoned that although the Funds identified Pipia's many "reprehensible" acts, "there [were] no proofs of that on [the] record." J.A. at 153 (Tr. of Mot. Hr'g). In order to reverse the district court, we must find that the district court abused its discretion in that it either made clearly erroneous findings of fact, improperly applied the controlling law, or used the incorrect legal standard in dismissing the petition as to Pipia. *Blue Cross & Blue Shield Mut. of Ohio*, 110 F.3d at 322.

The Funds carry the initial burden to show contempt. That is, the Funds must come forward with clear and convincing evidence showing that Pipia "violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Cincinnati Bronze*, 829 F.2d at 591 (quotation omitted). Thus, an initial issue we must resolve is whether an unnamed party can be subject to a court order, *i.e.*, whether a court's order directed to a corporation ever could reach out to bind a non-litigant, such as a corporate officer. The answer is clearly established in both this circuit and the Supreme Court.

Many decades ago, in a case where a corporate officer who failed to comply with a subpoena duces tecum was held in contempt, the Supreme Court stated:

A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Wilson v. United States*, 221 U.S. 361, 376 (1911) (noting that the corporation can be proceeded against in its corporate capacity at the same time that "[officers] are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation." (quotation omitted)). More recently, we have commented on the issue of holding a corporate president in contempt when an injunction is directed solely to the corporation or company. *See United States v. Hochschild*, 977 F.2d 208 (6th Cir. 1992), *cert. denied*, 506 U.S. 1067 (1993). In *Hochschild*, the defendant corporate officer argued that he was not bound by the terms of the injunction directed to his corporation. In support of his argument, the defendant relied on language in the district court's order that implied that the district court may have lacked jurisdiction over him because he was not a named party in the action. *Id.* at 212. On appeal, we determined that the injunction applied to the nonparty officer in his corporate capacity. We arrived at this conclusion after we juxtaposed the two contrasting viewpoints— the minority view suggesting that personal jurisdiction over a non-party for contempt only can be achieved through service of process and the majority view allowing personal jurisdiction for contempt over officers or corporate employees if they have notice of the injunction and its contents. *Id.* (noting that "more [cases] have held that officers or employees of corporate and business

entities are subject to in personam jurisdiction for purposes of contempt if they have notice of the injunction and its contents"); *see also Cent. States, Southeast and Southwest Areas Pension Fund v. Wintz Props., Inc.*, 155 F.3d 868, 876 (7th Cir. 1998) (deciding that the company's president and owner, a non-party to the lawsuit, also was subject to the injunction when the court's order was directed at the company and its officers); *NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977) ("It can hardly be argued that the principal officers of a labor union are not legally identified with it, and thus liable in contempt for disobeying an order directed to the union."). Heralding the majority view as the law of this circuit, we referenced a Second Circuit case quoting Judge Learned Hand: "'a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. This is well settled law.'" *Hochschild*, 977 F.2d at 212 (quoting *Backo v. Local 281, United Bhd. of Carpenters & Joiners*, 438 F.2d 176, 180 (2d Cir. 1970), *cert. denied*, 404 U.S. 858 (1971) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930))). Ultimately, we determined that the defendant officer was "bound by the injunction . . . because of his relationship to the corporation." *Id.*[10]

Other circuits have reasoned similarly. The Eighth Circuit in *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500 (8th Cir. 2000), was faced with a case strikingly similar to the one presented on this appeal. In *Chicago Truck Drivers*, a union pension fund and its trustees sued corporations for interim payments of withdrawal liability under ERISA. *Id.* at 503. The district court granted summary

---

[10] We noted that according to Federal Rule of Civil Procedure 65(d), injunctions are binding on defendant corporations' officers in their corporate capacities, so long as they have notice. *Hochschild*, 977 F.2d at 211.

judgment in the union pension fund's favor and ordered the commencement of payments. *See id.* Amended judgments followed, ordering further payments but "[b]oth the initial and amended judgments contained no reference to either [the corporations' sole officer and shareholder] specifically or the [corporations'] officers or other agents generically." *Id.* When the union pension fund never received any of the court-ordered payments, the fund filed a motion for contempt against both the corporations and their sole owner and shareholder in his personal capacity. *Id.* The union pension fund rested its case after it presented evidence that no payments had been made although the payments were due and that at the time the payments became due, the corporate entities had the resources to pay. *See id.* at 504. The district court denied the motion for contempt stating that the union pension fund failed "to produce evidence sufficient for a finding that the defendants have assets for making the judgment debt payments but did not do so." *Id.*

On appeal, the Eighth Circuit remanded the case to the district court, stating that the district court abused its discretion by shifting the burden to the union pension fund to show that the corporation had the present ability to pay and by failing to make any specific findings as to whether the defendant officer committed acts that might support a contempt finding against him personally. *Id.* at 508. In addition, the court of appeals instructed the district court on remand to make specific findings with respect to whether the parties satisfied their burdens. *Id.* at 505. The court further noted that although "a contempt finding against the [corporations likely] would [not] serve any useful purpose, since it appears they no longer have any assets," the union pension fund "is entitled to further development of the record concerning the dissipation of the [corporations'] assets, and an express finding from the court that the [corporations] have satisfied their burden on an inability-to-comply defense." *Id.* at 505-06.

The Eighth Circuit noted that although the Supreme Court in *Rylander* stated that a "present inability to comply" is a defense to civil contempt, some circuits have refined that statement requiring that an alleged contemnor, asserting inability to pay, establish "(1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply." *Chicago Truck Drivers*, 207 F.3d at 506 (quotations omitted). Regarding the assertion that the defendant officer could be held in contempt individually, the Eighth Circuit compared the case before it to injunctions under Federal Rule of Civil Procedure 65(d).[11] Because the Supreme Court liberally applied Rule 65(d) to any "'equitable decree compelling obedience under the threat of contempt'" including "not only injunctions . . . but also 'enforcement orders and affirmative decrees,'" the Eighth Circuit determined that a corporate officer can be bound by a court's payment orders even when the "orders [make] no specific reference to him." *Chicago Truck Drivers*, 207 F.3d at 507 (quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75-76 (1967)). Thus, while a district court's order setting a pay schedule may or may not be classified as an injunction, it nevertheless can be treated as one when "it compel[s] . . . affirmative, prospective obedience with it." *Id.*

In the case before us, the district court's order only referred to Gary's Electric and did not mention its agents, officers, or owners at all. But, as is evident from the Supreme Court in *Wilson* and our opinion in *Hochschild*, whether or not Pipia was a named defendant in the order, or even mentioned at all,

---

[11] Rule 65(d) provides that an injunction or a restraining order binds: "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d).

is not controlling. *See Wilson*, 221 U.S. at 376; *Hochschild*, 977 F.2d at 212. Pipia, as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was. *See Chicago Truck Drivers*, 207 F.3d at 508. Because Pipia either "prevent[ed] compliance or fail[ed] to take appropriate action within [his] power for the performance of the corporate duty," the district court had the authority to hold Pipia in contempt. *Wilson*, 221 U.S. at 376. The Funds only needed to show that Gary's Electric did not comply with the district court's judgment in order to meet their burden. That said, the Funds met their initial burden for a contempt finding against Pipia when they presented to the district court the previous order of the court affirming the LMC awards and Pipia's own deposition testimony admitting that he knew of the court's order yet failed to observe it.[12] *See, e.g., Chicago Truck Drivers*, 207 F.3d at 505 ("Here, it is undisputed that [the corporations] have not made any payments pursuant to the court's order. At that point, the burden should have shifted to [the corporations] to show an inability to comply."). The Funds presented clear and convincing evidence — undisputed, even — that Pipia, the sole owner and officer of Gary's Electric, "with knowledge of the court's order," chose to violate the court's order by not making the required contributions to the Funds. *Cincinnati Bronze*, 829 F.2d at 591 (quotation omitted). Moreover, the district court's order was in effect because Gary's Electric did not file a supersedeas bond and because Gary's Electric did not obtain a stay of the district court's judgment pending appeal. Thus, because Pipia is bound by the district court's order directed at Gary's Electric and because the Funds presented evidence that

---

**[12]** In his testimony, Pipia uses ignorance as an excuse for his failure to pay the contributions. He states: "I just wasn't aware that I had to pay it. I thought we were in court. We were fighting this out, and I didn't — I was not going to join the union, and rather than pay that kind of money, I would just close the business down." J.A. at 202 (Pipia Dep.).

no payments had been made although the payments were due, the district court improperly dismissed the petition to hold Pipia in contempt.

Once the Funds establish their prima facie case, the burden of production shifts to Pipia, who may defend against an order of contempt by producing evidence to show that he is presently unable to comply with the court's order. *See Rylander*, 460 U.S. at 757. However, as we stated previously, some courts have narrowed *Rylander* by requiring either that the contemnor prove in great detail his inability to pay, show that he did not cause the inability, or prove that he unsuccessfully attempted compliance in good faith. *See Chicago Truck Drivers*, 207 F.3d at 506. We previously have required a contemnor to show "categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc.*, 74 F.3d at 720. We also have evaluated whether the defendant "took all reasonable steps within [his] power to comply with the court's order." *Peppers*, 873 F.2d at 969. Until now, however, we have never decided whether we embrace the refinement on *Rylander* that requires the contemnor to show that his present inability to comply is not his own fault or the result of self-induced inability. Nor have we decided previously whether we would sanction the wrongdoer. Today we choose to follow the lead of the Eighth Circuit and hold that the *Rylander* "present inability to comply" defense to civil contempt requires that the contemnor show that he is not responsible for the present inability to pay.[13] If the contemnor cannot make this

---

**[13]** To the extent that *Chicago Truck Drivers* suggests that the defendant officer could not be held liable for an amount equivalent to the underlying delinquent payments because he was never sued in his individual capacity, we disagree. Because one of the purposes of civil contempt is to compensate a complainant for its losses, we note that Pipia can be fined in an amount equivalent to the original judgment. The district court should consider to what extent Pipia deliberately caused the underlying judgment to remain unpaid and should sanction accordingly.

showing, then the *Rylander* defense is unavailable. Thus, taking our cues from the Supreme Court in *Rylander* and *Wilson*, we determine that if a corporate officer avoids a court's order to the corporation by failing to take action or attempt compliance, "they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." *Wilson*, 221 U.S. at 376. Moreover, we hold that because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer. *See United Mine Workers*, 330 U.S. at 303-04.

Turning then to the instant case, Pipia clearly did not meet his burden of production. As the Funds point out, Pipia testified in his deposition that he did not abide by the judgment because he did not think Gary's Electric was contractually obligated to do so. Interestingly and without a court order, however, Pipia paid off nearly all Gary's Electric's other creditors approximately $541,100 between May 17, 1999 and December 31, 1999. J.A. at 139-40 (Tr. of Mot. Hr'g). Moreover, according to the Funds, Gary's Electric had gross receipts of $1,800,000 in 1999, the year the company closed its doors. Even assuming that all of Pipia's actions were taken in good faith and not to avoid paying the Funds, Pipia's decision to pay all other creditors and refusal to pay the Funds anything at all is ample evidence from which the district court could conclude that Pipia did not take "all reasonable steps" to ensure Gary's Electric's compliance with the court order. *See Peppers*, 873 F.2d at 969. In addition, Pipia's testimony that the company's affairs had wound up shortly after the contempt hearing — presumably attempting to imply a lack of expendable funds — is hardly sufficient to show "categorically and in detail" why Pipia is unable to

comply with the court's order.[14] *Rolex Watch U.S.A., Inc.*, 74 F.3d at 720.

Because we have decided that a showing of clean hands is essential to the *Rylander* defense, we are impressed even more by Pipia's attempts to drain the corporate resources to avoid satisfying the court's order. The first example cited by the Funds is the doubling of Gary's Electric's rent[15] that occurred after the Funds moved for summary judgment. The office space that Gary's Electric leased was owned by one of Pipia's other companies, KRP, and thus the increased rent directly benefitted KRP at the expense of Gary's Electric and its creditors. Another example of Pipia's diversion of Gary's Electric's assets was Pipia's salary increase from $70,000, as indicated in his 1997 income tax return, to $220,500 in 1999.[16] Additionally, Pipia received a $54,000 bonus in October 1999;[17] Gary's Electric had an outstanding $5,100 loan to Pipia in June 2000; and Pipia purchased a fur coat using funds from Gary's Electric's trade-exchange accounts-receivable account which he later documented as a bonus.

---

[14] In his deposition testimony, Pipia indicates that business operations ceased on January 2000 and he then liquidated Gary's Electric's assets. Although his testimony indicates that Gary's Electric still owes some money to the bank, owes taxes to the state, and no longer has any accounts receivables, it is not at all clear in a categorical and detailed way that Gary's Electric was unable to comply with the court's order when the order was issued.

[15] The rent went from $1,500 a month to $3,000 a month.

[16] At the motion hearing, Gary's Electric's counsel suggested that Pipia's pay raise occurred because business sales went up from $1,200,000 to $1,900,000 that year.

[17] According to a letter from Pipia's accountant, the October 1999 payroll did indicate a $54,000 bonus for Pipia; however, $18,000 of this money was withheld taxes, and the remaining $36,000 was a charge to his loan account. Thus, Pipia received no net cash from this transaction.

Considering these events in their entirety, we believe that the Funds are "entitled to further development of the record regarding a possible contempt finding against [Pipia] personally." *Chicago Truck Drivers*, 207 F.3d at 506.

In sum, the district court abused its discretion on numerous fronts when it denied the contempt petition for Pipia. First, the court's determination that Pipia could not be held in contempt because he was not a defendant was an improper application of controlling law. *See generally Hochschild*, 977 F.2d at 212 (holding that a corporate officer was bound by an injunction directed at the corporation). Second, because Pipia, the company's sole owner and officer, was responsible for the corporation's compliance, he implicitly was ordered to do more than merely submit to a deposition as the district court opinion suggests. *See Wilson*, 221 U.S. at 376. Third, the district court clearly did not consider properly the burdens in this case. *See Chicago Truck Drivers*, 207 F.3d at 505. In order to proceed on its motion for contempt, all the Funds needed to show was that Gary's Electric did not pay the ordered amounts. Thus, once Gary's Electric admitted that it did not obey the court's order to make payments to the Funds, the district court abused its discretion when it failed to shift the burden to Pipia to show "categorically and in detail" why Gary's Electric could not pay. *Rolex Watch U.S.A., Inc.*, 74 F.3d at 720. Moreover, based on today's holding, Pipia also will need to show that he was not the cause of Gary's Electric's inability to pay. Finally, the district court made erroneous findings of fact when it dismissed the contempt petition with respect to Pipia stating that there were no proofs on the record of Pipia's "reprehensible" acts. Pipia's deposition testimony provided sufficient evidence from which the district court could have concluded that additional development of the record was necessary.

Therefore, we instruct the district court to use the proper legal tests and make specific findings with respect to whether the parties satisfied their respective burdens. If Pipia is found

to be in contempt, it is up to the district court to "fashion an appropriate sanction." *Chicago Truck Drivers*, 207 F.3d at 508. Appropriate sanctions would aim to compensate the Funds for losses resulting from Pipia's purposeful decisions to avoid paying the judgment and to eliminate Gary's Electric's resources.

## 2. Contempt Is an Acceptable Form of Relief

Gary's Electric argues that contempt is not the proper relief for failure to pay a monetary judgment, and that only garnishment, attachment, and execution are available as collection remedies. We disagree with Gary's Electric's classification of this action as a collection action. In our opinion, the sanction of civil contempt is more properly considered a compensatory remedy and an encouragement to comply with court orders. As we stated above, the objective of any contempt determination is to enforce the message that court orders and judgments are to be taken seriously. *See Cincinnati Bronze*, 829 F.2d at 590. Moreover, judicial sanctions can be used not only to coerce compliance, but also to compensate the complainant. *See United Mine Workers*, 330 U.S. at 303-04; *see also* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2960, at 372-73 (2d ed. 1995) ("A federal court's discretion includes the power to frame a sanction to fit the violation."). Thus, the sanction of civil contempt may include a fine designed to compensate the Funds not only for the money that Pipia squandered but also for the money Pipia diverted from the Funds and paid to other creditors. *See generally United Mine Workers*, 330 U.S. at 303-04 (noting that judicial sanctions may be used to compensate a complainant for losses and that they "must of course be based upon evidence of [the] complainant's actual loss"); Wright, Miller, & Kane, *supra* § 2960, at 369-70 ("[Relief in a civil contempt proceeding] often takes the form of a fine in the amount of the damage sustained by plaintiff."). Thus, because this contempt proceeding is brought to compensate

the Funds for losses based on Pipia's failure to comply with the court's order and not as a medium for collecting the underlying judgment, it is not a collection action but a compensatory tool which expressly permits the use of monetary sanctions in this manner.[18]

### 3. A Corporate Officer Can Be Held in Contempt Without Piercing the Corporate Veil

According to Gary's Electric, because the Funds did not attempt to pierce the corporate veil and did not sue Pipia in his individual capacity, Pipia could never personally be held responsible for Gary's Electric's failure to make the fringe-benefit contributions as ordered by the court. Gary's Electric also argues that because the Funds failed to submit specific

---

[18]Gary's Electric's position also is refuted by an analysis of the Supreme Court's decision in *NLRB v. Deena Artware, Inc.*, 361 U.S. 398 (1960). Although this Supreme Court case did not specifically address the question raised by Gary's Electric, whether contempt proceedings are proper to enforce a money judgment, the concurrence in the Supreme Court opinion reveals that contempt proceedings are used to enforce orders for back pay. *See Deena Artware, Inc.*, 361 U.S. at 412-14 (Frankfurter, J., concurring) ("It is equally appropriate for the Court of Appeals, by decree enforcing the Board's order, to place [an employer] at the hazard that if an amount is found to be owing, [conduct designed to defeat the back-pay order] subsequent to the decree may be found to be contumacious. . . . Accordingly, the petition for contempt should have been sustained."); *see also NLRB v. Deena Artware, Inc.*, 251 F.2d 183, 186 (6th Cir. 1958) ("*In the absence of contempt proceedings*, we do not find that jurisdiction is conferred upon us to order and supervise discovery proceedings in the appellate court for the purpose of enforcing a *monetary award* running in favor of a private individual, even though the award has received its vitality from a previous decree of this Court." (emphasis added)). Because there is no material distinction between finding contempt for failure to comply with an order to provide employees back pay and for failure to comply with an order to make past-due fringe benefit contributions, we see no justification for treating these two monetary awards differently under the law. Thus, we conclude that *Deena Artware* provides additional support for a determination that contempt is an appropriate form of relief in these circumstances.

pleadings and proof of an alter-ego relationship, Michigan law does not permit the court to pierce the corporate veil and hold a corporate officer liable for a corporation's debt. In support of Gary's Electric's contention, *Chicago Truck Drivers* also suggests that the defendant corporate officer could not be liable for the underlying delinquent payments because he was never sued in his individual capacity. 207 F.3d at 507-08.

Once again, Gary's Electric fails to recognize that the Funds are not requesting that Pipia be liable for Gary's Electric's delinquent fringe-benefit contributions, but rather the Funds request that Pipia be held in contempt. *Chicago Truck Drivers* expressly provides that the district court could "fashion an appropriate sanction" if the defendant officer was ultimately found in contempt of court. 207 F.3d at 507-08. Thus, on remand, the district court could determine that a proper sanction would be to fine Pipia in an amount equivalent to those funds that Pipia reasonably diverted. *See Chicago Truck Drivers*, 207 F.3d at 505 (noting that "[w]here compensation is intended, a fine is imposed, payable to complainant") (quoting *United Mine Workers*, 330 U.S. at 304). Fittingly, the Funds never asked that Pipia be held personally responsible for the amount Gary's Electric was ordered to pay, but rather the Funds requested that Pipia be held accountable for his own deliberate disobedience of the court's order. Piercing the corporate veil is unnecessary because the Funds are not attempting to hold Pipia liable for Gary's Electric's corporate debts.

### III. CONCLUSION

Because the district court abused its discretion when it denied the Funds' petition to hold Pipia in contempt, we **VACATE** the district court's decision and **REMAND** for additional proceedings consistent with this opinion.