NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0618n.06
Filed: October 15, 2008

No. 07-6084

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NEFT, LLC, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BORDER STATES ENERGY, LLC; WILLIAM | ) | |
| STAPLES; JAMES STAPLES; ANNETTE | ) | |
| STAPLES; LYLE COOPER; PATRICK MARTIN; | ) | |
| and STEVEN WALLACE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; and STAFFORD, Senior District Judge.[*]

GRIFFIN, Circuit Judge.

The parties settled plaintiff's claims for fraud, false advertising, and breaches of contract and fiduciary duty. The terms of the settlement agreement were read into the record and accepted as a court order. Plaintiff appeals the district court's decisions (1) limiting the personal liability of the individual defendants for the debt of their LLC to $20,000 each, and (2) denying its request to hold the individual defendants and their LLC in civil contempt, even though the court determined that the LLC had breached the settlement agreement. Because the district court correctly determined that the

_____

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

individual defendants were not personally liable for the debt of their LLC beyond $20,000, the amount of their personal guarantees, and that the LLC, through the individual defendants, took all reasonable steps but were unable to comply with the court order, we affirm.

I.

Plaintiff NEFT, LLC sued defendants Border States Energy, LLC ("Border States"), and its members (the individual defendants)[1], in the Eastern District of Tennessee, alleging that defendants fraudulently induced it to finance the development and exploitation of oil wells in Kentucky. Prior to a hearing on NEFT's motion for injunctive relief, the parties settled their dispute and recited the terms of the settlement agreement on the record. The agreement required that defendants "deliver to NEFT a note signed by Border States Energy in the amount of $450,000" and "secured by $450,000 security acceptable to NEFT . . . ." District Judge Phillips cautioned the parties that the settlement agreement functioned as a court order, instructed them to conduct themselves in good faith, and warned them that violating the agreement would be equivalent to violating a court order.

When Border States failed to make its first full installment payment on the note and when NEFT protested the adequacy of the collateral offered by Border States as security on the note, the parties again requested the court's assistance. At a status conference, Judge Phillips ordered a recess and urged the parties to attempt to resolve their new disputes. The parties partially resolved their

---

[1]Border States's members included: defendants William Staples, James Staples, Annette Staples, Lyle Cooper, and Steven Wallace. Defendant Patrick Martin's interest in Border States was held through BFM Partnership. Martin is a general partner of BFM Partnership.

differences when the individual defendants agreed to personally guarantee repayment of the debt on the note in the maximum amount of $20,000 each.[2]

When Border States failed to make its second payment on the note, NEFT twice extended the payment deadline, and the parties amended the note to include penalties for future missed payments. Border States again, however, failed to make its second payment under the extended deadline, as well as its third payment, and NEFT filed a motion for civil contempt and renewed its request for injunctive relief.

Following briefing and an evidentiary hearing on the motion, Judge Phillips determined that Border States had breached the settlement agreement by failing to make payments in a timely fashion and by failing to tender commercially reasonable security. He ordered Border States to immediately pay NEFT $419,383.76 (which included past due installments of $121,848.72, penalties of $13,000.00, and the balance remaining on the note of $284,535.04); ordered the individual defendants to immediately pay NEFT their $20,000 personal guarantees, in the total amount of $100,000, to be applied to the balance owed under the note; awarded NEFT its reasonable attorney fees and costs incurred in enforcing the note; and dismissed the complaint with prejudice on the basis that the case had been previously settled in full.

Judge Phillips, however, declined to enter an order freezing the personal assets of the individual defendants, on the grounds that (1) KY. REV. STAT. § 275.150(1) immunized the

---

[2]Because defendants James and Annette Staples were husband and wife, they were treated as one individual.

individual defendants from personal liability for the debts of Border States, and (2) the settlement agreement did not impose personal liability on the individual defendants beyond $20,000, the amount of their personal guarantees. Judge Phillips also denied NEFT's requests to hold Border States and the individual defendants in contempt, explaining that although Border States had breached the settlement agreement, it was unable to comply with the court's order. NEFT timely appeals.

## II.

NEFT first contends that the district court erred in limiting the personal liability of the individual defendants on the promissory note to $20,000 each, thus preventing NEFT from collecting payment on the balance owed by the now-dissolved Border States. NEFT relies on the following statements to support its contention that it reserved its right to tap the personal assets of the individual defendants if Border States failed to comply with its obligations under the note:

> MR. WAGNER [Counsel for NEFT]: This is in no way – I want to make clear for the record – this is in no way any admission or a waiver or a discharge of any argument or a claim that we are litigating here to resolve with respect to the Plaintiff and the Defendants.
>
> . . .
>
> MR. QUIST [Counsel for defendants]: [NEFT], in the event things go south, they can collect from whomever they want and whatever they choose.
>
> . . .
>
> MR. WAGNER: But if the Defendants fail to perform or the Court – if the settlement agreement is not perfected, then this action is [s]till active on the Court's docket. And I don't want there to be any misunderstanding, that we are not waiving claims, we're not discharging any liability.

"[A] district court's interpretation of a consent decree[3] or judgment is a matter of law subject to de novo review, and the underlying findings of fact are reviewed for clear error." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371 (6th Cir. 1998)). Therefore, to the extent that the district court's determination of the personal liability of the individual defendants rests on a legal interpretation of the settlement agreement or Kentucky law governing limited liability companies, the court's legal conclusions are reviewed de novo. *See Alexander*, 496 F.3d at 476. Factual findings, on the other hand, are "clearly erroneous when, although there may be evidence to support it, the reviewing court, [considering] the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007) (internal quotation omitted). "The court's task in interpreting a consent decree is to ascertain the intent of the parties at the time of settlement." *Alexander*, 496 F.3d at 477-78 (quotation and citation omitted).

Border States is a limited liability company under Kentucky law. KY. REV. STAT. § 275.150(1) provides:

> [N]o member, manager, employee, or agent of a limited liability company, . . . shall
> be personally liable by reason of being a member, manager, employee, or agent of the
> limited liability company, under a judgment, decree, or order of a court, agency, or

---

[3]"A consent decree is essentially a settlement agreement subject to continued judicial policing. It is a hybrid in the law, sharing features of both a voluntary settlement agreement that requires no judicial intervention and a final judgment order that throws the prestige of the court behind the compromise struck by the parties." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) (quotations and citations omitted).

> tribunal of any type, or in any other manner, in this or any other state, or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise.

Immunity, however, is not conferred if, "under a written operating agreement or under another written agreement, a member or manager [] agree[s] to be obligated personally for any of the debts, obligations, and liabilities of the limited liability company." KY. REV. STAT. § 275.150(2). Therefore, the individual defendants, as members of Border States, are not personally liable for its debts under § 275.150(1) unless they agreed in writing to be personally obligated under § 275.150(2).

Here, the individual defendants did not agree in writing to incur personal liability for the debts of Border States under the settlement agreement. To the contrary, the individual defendants were never parties to the settlement agreement; rather, the agreement was entered into by NEFT and *Border States*. Central to this conclusion is the agreement's unambiguous requirement that defendants "deliver to NEFT a note *signed by Border States Energy* in the amount of $450,000." (Emphasis added.) The agreement did not require that any individual defendant execute the note, nor did any defendant sign the note in an individual capacity.

Although the agreement imposed various obligations upon the individual defendants – delivery of the note and its security, and a promise not to dissipate the assets of Border States – those duties were assumed by the individual defendants on behalf of and for the benefit of Border States, a business entity which cannot act on its own. *See Union Pac. Coal Co. v. United States*, 173 F. 737, 745 (8th Cir. 1909) ("[A] corporation can act only by an agent . . . ."). In accordance with the unambiguous language of KY. REV. STAT. § 275.150(2), which requires a written agreement to

eviscerate the shield of immunity conferred by § 275.150(2), mere conduct undertaken by individuals on behalf of an LLC does not transform the debts of the LLC into personal debts. Notably, the individual defendants made no promises, other than their written guarantees limiting their personal liability to $20,000 each, to secure the note with their personal collateral or to refrain from dissipating their personal assets.

Had NEFT believed that the individual defendants were personally obligated to repay the note, it would not have accepted the $20,000 personal guarantees from each individual defendant. Not only are "personal guarantees" implicitly superfluous if a defendant is already "personally obligated" to repay a debt, but the total amount of the personal guarantees pledged by the individual defendants – $100,000 – constituted a mere fraction of the more than $450,000 balance owed on the note.

NEFT's awareness of potential personal assets, coupled with its deliberate choice not to insist that the individual defendants pledge those assets as security on the note, demonstrate that NEFT understood that the maximum personal exposure of each individual defendant was $20,000.[4] Consistent with that conclusion, counsel for defendants emphasized that defendants intended that the settlement agreement impose obligations on business entities – NEFT and Border States; the

---

[4]Counsel for NEFT acknowledged that "either the Defendants themselves or their spouses or families do, in fact, own real estate in which there is equity available" and that Defendant Martin "mortgaged his real property for 1.5 million dollars in cash" and "has a very large sum of cash."

agreement did not permit NEFT to encumber the personal assets of the individual defendants in the event that Border States defaulted on the note.[5]

Numerous statements by NEFT's counsel in the proceedings below confirm that NEFT recognized that the maximum amount it could collect from the personal assets of each individual defendant was $20,000:

> MR. WAGNER: Your Honor, each of the individual Defendants, and that includes the Staples as one unit, husband and wife, and the other Defendants individually, have agreed to personally guarantee the note at issue *to a maximum of $20,000 each*, and that would be joint and several with respect to the note.

(Emphasis added.)

When asked by Judge Phillips whether he understood that an individual defendant who paid the $20,000 personal guarantee would be discharged from further liability on the note, NEFT's counsel confirmed:

> MR. WAGNER: *I do understand that there is a maximum on the amount due.* I don't necessarily agree with the notion that he would be, quote/unquote discharged. I don't know for – taking Mr. Cooper as an example, that him satisfying anything under those terms at this point in time, with the status of the matter as it is right now, that he would necessarily be entitled to a, quote/unquote, discharge at that. *But I agree that it is the contemplation here that the personal guarantees of the individuals for the note would not result in any individual being sought after for any more than $20,000.*

(Emphasis added.)

---

[5]Counsel for defendants stated that "we endeavored to resolve this as a business arrangement . . . between corporations," that defendants "were thinking corporately" when offering security on the note, and that his "clients, of course, are trying to do what's right, but individually was not part of it."

Later, NEFT's counsel again verified:

THE COURT: So the maximum exposure of any unit will be $20,000; is that correct?

MR. WAGNER: Yes.

Near the end of the status conference, NEFT's counsel repeated: "And as Mr. Quist has mentioned a couple times, if things go south, *the most that we can collect against any individual is up to a maximum amount of $20,000 under the note*." (Emphasis added.)

At the evidentiary hearing on the motion for contempt, NEFT's counsel conceded:

[T]he plaintiff doesn't claim that any of the individual defendants are liable under the note. They are not signatories. We can't compel Lyle Cooper to make a payment under a note to which he is not a signatory, unless under the personal guarantee.

NEFT, through its counsel, therefore acknowledged at least *six times* before the district court that the maximum amount it could collect from each individual defendant was $20,000, the amount of each defendant's personal guarantee. Indeed, the written language of each personal guarantee unambiguously stated that "[t]he Guarantor guarantees payment of the promissory note *in an amount not to exceed $20,000*." (Emphasis added.)

Although NEFT's counsel stated that NEFT's acceptance of the personal guarantees did not "waive" or "discharge" its claims against defendants, and defendants' counsel commented that "in the event things go south, [NEFT] can collect from whomever they want and whatever they choose," NEFT's reliance on these remarks is misplaced for three reasons. First, NEFT fails to explain the unambiguous language in the written personal guarantees and the numerous remarks it made conceding that the personal liability of each individual defendant could not exceed $20,000. We

have stated that "[t]he evidence must be viewed in the light most likely to support the district court's decision" and that "where there are two permissible views of the evidence[,] the district court's conclusions cannot be clearly erroneous." *Ellis*, 497 F.3d at 611 (internal quotation marks and citations omitted).

Second, even assuming for the sake of argument that NEFT did preserve its right to pursue payment from the individual defendants beyond the amounts of their personal guarantees, such preservation was futile because the applicable law does not *recognize* the right. KY. REV. STAT. § 275.150(1) does not permit NEFT to recover from the individual defendants beyond the amounts of their personal guarantees because it confers immunity upon them for the debts of their LLC. NEFT does not contend that the individual defendants signed a *written* agreement under KY. REV. STAT. § 275.150(2), excepting them from the immunity conferred by § 275.150(1) and obligating them to answer personally for the debts of Border States. In fact, the only written agreements signed by the individual defendants were the personal guarantees, which capped personal liability at $20,000 per individual defendant.

Third, the comment by defendants' counsel that "in the event things go south, [NEFT] can collect from whomever they want and whatever they choose" related to the stipulation that each individual defendant's liability on the note was joint and several, "up to a maximum of $20,000 per individual" and that "there is no order of priority with respect to the individuals." Defense counsel's comment cannot reasonably be interpreted as a gratuitous offer to broaden his clients' personal liabilities beyond the amount of their $20,000 personal guarantees.

III.

NEFT also contends that the district court erred in denying its request to hold the individual defendants and Border States in civil contempt, even though the court determined that Border States had breached the settlement agreement. Specifically, NEFT asserts that the court incorrectly concluded that defendants were unable to comply with its order. In support of that contention, NEFT makes three arguments:

(1) The district court applied an incorrect legal standard. Specifically, the court asked whether defendants had attempted to comply with the court's order in "good faith," not whether defendants "took all reasonable steps within their power to comply with the Court's order."

(2) Defendants have not demonstrated that they have taken all reasonable steps within their power to comply with the settlement agreement/court order.

(3) Only two individual defendants argued that their efforts to comply with the settlement agreement/court order were in good faith; the conduct of the two individual defendants cannot be ascribed to all defendants.

A district court's decision on a motion for civil contempt "is within the sound discretion of the trial court and thus is reviewed only for an abuse of discretion." *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citation omitted). A district court abuses its discretion when "we are left with the definite and firm conviction that its conclusion was a clear error of judgment." *Days Inn Worldwide Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (citation omitted). The district court's decision must be afforded

"great deference," and "it will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied governing law, or used an erroneous legal standard." *Elec. Workers*, 340 F.3d at 378 (citation omitted).

To justify holding a litigant in civil contempt, the moving party must establish, by clear and convincing evidence, a prima facie case that the non-moving party "violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id*. (citation omitted). Once the movant has established the prima facie case for civil contempt, the burden shifts to the alleged contemnor to produce evidence showing that it was presently unable to comply with the court's order. *Id*. (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). To satisfy this burden, "a defendant must show categorically and in detail why [it] is unable to comply with the court's order." *Elec. Workers*, 340 F.3d at 379 (citation omitted). Good faith is not a defense for failure to comply with a court order, *see Peppers v. Barry*, 873 F.2d 967, 968-69 (6th Cir. 1989); rather, the proper inquiry is "whether the defendants took all reasonable steps within their power to comply with the court's order." *Elec. Workers*, 340 F.3d at 379 (quoting *Peppers*, 873 F.2d at 969).

NEFT's first contention that the district court incorrectly asked whether defendants had attempted to comply with the court's order in "good faith," instead of assessing whether defendants "took all reasonable steps within their power to comply with the Court's order," is without merit for two reasons. First, the district court set forth the correct standard in its opinion: "The standard is whether the defendants took all reasonable steps within their power to comply with the court's order.

- 12 -

*Peppers v. Barry*, 873 [F].3d 967 (6th Cir. 1989)." Immediately after it articulated the correct standard, the district court then assessed the facts under the standard.

Second, although the district court did find that defendants acted in "good faith," it had a legitimate reason for doing so. At the hearing in which the parties recited their agreement on the record, NEFT's counsel insisted that defendants conduct themselves in good faith. Obliging counsel's request, Judge Phillips admonished defendants: "If you're going to enter into this agreement, you must do so in *good faith*, because if you act in bad faith and you intentionally violate the agreement, you don't want to come back and see me." (Emphasis added.) Thus, Judge Phillips specifically ordered, *at NEFT's request*, that the parties conduct themselves in "good faith." As a part of the court's order, therefore, the duty of "good faith" commingled with the common law obligation that defendants take all reasonable steps within their power to comply with the order. Thus, the district court did not apply an incorrect standard of law when assessing the merits of NEFT's request for civil contempt and properly considered whether defendants conducted themselves in good faith.

Next, NEFT contends that the district court erred in finding that defendants took all reasonable steps to comply with its order. Specifically, NEFT asserts that defendants' continued efforts to recruit new investors and develop the oil fields, rather than liquidate the assets of Border States, were simply continuations of their "fraudulent scheme." The district court found that defendants took all reasonable steps to comply with its order because Border States offered all its assets as collateral on the note and attempted to make the required installment payments "by utilizing

the only resource that [it] had, the development of the Kentucky oil wells." The court further found that the individual defendants "expended their personal funds, bartered services, and spent time to meet the terms of the settlement agreement" and that "NEFT has pointed to no alternative assets, other than the individual defendants' personal assets, that it would accept as collateral."

We conclude that the district court did not abuse its discretion in finding that defendants were unable to comply with its order. We agree with the district court that "NEFT understood the risks of entering into an oil well development project and the speculative nature of an investment in oil wells." Had defendants made no further attempts to develop the oil wells, NEFT might have faulted defendants for liquidating Border States's assets, which both parties agree were insufficient to honor Border States's repayment obligations under the note and which NEFT refused to accept as security. Further, the district court's conclusion that defendants took all reasonable steps within their power to comply with its order is amply supported by the record.

Finally, NEFT contends that the district court erred in finding that all individual defendants were unable to comply with its order on the basis of testimony from only two of the defendants. That contention is without merit because it incorrectly assumes that the district court found that all defendants – Border States and the individual defendants – had violated its order. However, Judge Phillips properly determined that only *Border States*, the sole signatory on the promissory note and the sole debtor, not the individual defendants, had violated his order by breaching the settlement agreement. Consistent with that finding, Judge Phillips properly shifted the burden "*to* [*Border States*] to prove 'categorically and in detail' that *it* was unable to comply with the court's order."

(Emphasis added.)    Border States, through the testimony of defendants Wallace and Cooper,

sufficiently established that it was unable to comply with the order of the district court.

IV.

Because the district court correctly determined that the individual defendants were not

personally liable for Border States's debts beyond $20,000, the amount of their personal guarantees,

and that defendants took all reasonable steps but were unable to comply with the order of the district

court, we affirm.