RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

*v.*

BANNUM, INC. and BANNUM PLACE OF SAGINAW, LLC, a single employer and/or joint employers and/or a Parent Corporation,

*Respondents.*

Nos. 21-2664/2690

───────────────

On Motion to Adjudicate Respondents in Civil Contempt
of Protective Restraining Order and for Spoliation Sanctions
Nos. 07-CA-207685; 07-CA-211090; 07-CA-215356.

Decided and Filed:  February 23, 2024

Before:  MOORE, COLE, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON MOTION AND REPLY:**  Helene D. Lerner, Paul A. Thomas, Shawnnell T. Barnett, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB.  **ON RESPONSE:** Frank T. Mamat, DINSMORE & SHOHL, LLP, Troy, Michigan for Bannum.

The court delivered a PER CURIAM opinion (pp. 1–12) and order (pp. 13–15).

───────────────

## OPINION

───────────────

PER CURIAM.  In July 2023, we granted the National Labor Relations Board's petition for a protective restraining order prohibiting Bannum, Inc. and Bannum Place of Saginaw, Inc.

(collectively, "Bannum") from dissipating its assets and ordering it to provide the National Labor Relations Board ("the Board") with various financial records.  The Board now moves for us to hold Bannum in civil contempt for failing to comply with the protective restraining order.  The Board also moves for spoliation sanctions against Bannum.  Because Bannum violated the clear terms of the protective restraining order, we **GRANT** the Board's motion to adjudicate Bannum in civil contempt.  Because it is not clear at this point that evidence has been lost or destroyed, however, we **DENY** without prejudice the Board's motion for spoliation sanctions.

## I.

Bannum, Inc. and Bannum Saginaw[1] operated and ran reentry services for formerly incarcerated individuals.[2]  *See Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518, 522 (6th Cir. 2022).  In April 2021, the National Labor Relations Board issued a decision and order finding that Bannum had committed unfair labor practices in violation of the National Labor Relations Act.  *Bannum Place of Saginaw, LLC*, 370 NLRB No. 117, slip op. at *1 (Apr. 30, 2021).  On that basis, the Board directed Bannum to reinstate and make whole two employees whom it had fired.  *Id.* at 6.  In July 2022, we granted the Board's application to enforce the order.  *Bannum Place*, 41 F.4th at 530.

Bannum disputed the amount of backpay it owed under the enforced Board order and, in June 2023, following additional Board proceedings, the Board again ordered Bannum to pay backpay, benefits, and interest to the relevant employees.  *Bannum Place of Saginaw, LLC and Bannum, Inc.*, 372 NLRB No. 97, slip op. at *1 (June 27, 2023).  The Board ordered payment totaling $112,476.53, as well as interest and tax offsets.[3]  *Id.*  On June 6, 2023, the Board filed a motion in this court for a protective restraining order ("PRO") against Bannum.  D. 38 (PRO

---

[1]Bannum, Inc. and Bannum Saginaw were previously found "to be a Single Employer, and/or Joint Employers and/or a Parent Corporation."  *NLRB v. Bannum, Inc.*, Nos. 21-2664/2690, 2023 WL 4842837, at *1 (6th Cir. July 27, 2023) (order) (per curiam) (quoting D. 38-2 (Ray Decl. ¶ 5) (6th Cir. June 6, 2023)).  We will refer to respondents collectively as "Bannum."

[2]We include a short summary of this case's relevant procedural background here.  For a more extensive discussion, *see Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518 (6th Cir. 2022); *Bannum, Inc.*, 2023 WL 4842837.

[3]In July 2023, the Board filed an application in this court for enforcement of its supplemental order.  *See NLRB v. Bannum Place of Saginaw, LLC, et al.*, No. 23-1632 (6th Cir.).  That application is outstanding.

Mot.) (6th Cir. June 6, 2023).   The PRO motion alleged "that both Bannum companies are currently in the process of liquidating their assets and winding down their operations." *Id.* at 3. On that basis, the Board argued that "a protective restraining order is necessary to ensure Bannum's ability to remedy its backpay liability . . . and to ensure the efficacy of this Court's orders." *Id.* at 4.   On July 27, 2023, we granted the Board's motion and issued a protective restraining order. *Bannum, Inc.*, 2023 WL 4842837; D. 55 (PRO) (6th Cir. July 27, 2023).

The PRO imposes several specific obligations on Bannum.   In relevant part, the PRO obligates Bannum to:

(1)   "[K]eep and, within 48 hours of request by the NLRB, make available to the NLRB for inspection and copying, written records of each and every transaction involving expenditures or receipts by [Bannum] in excess of $5,000" after entry of the PRO.  D. 55 (PRO ¶ IV) (6th Cir. July 27, 2023).

(2)   If Bannum sold, transferred, or otherwise disposed of any "assets with a value in excess of $5,000 . . . between September 28, 2017 and the entry of [the PRO]," Bannum must "provide in writing to the NLRB[ ,] . . . within ten (10) days of the entry of [the PRO], a description of the asset or assets involved in each such transaction, the value of each asset at the time [Bannum] acquired it and at the time of the sale, . . . the consideration received in exchange for the asset, the subsequent disposition of the consideration, and the name(s) and address(es) of all persons or entities who were parties to the transaction." *Id.* ¶ VII.

(3)   "[W]ithin ten (10) days of the date of [the PRO], . . . furnish the NLRB with a verified list of all of their assets, real and personal, which exceed $500 in value . . . ."   *Id.* ¶ VIII.  The list of assets must include "land, vehicles, inventory, equipment, bank account numbers, [and] certificates of deposit," among other assets.[4] *Id.*

In short, the PRO ordered Bannum to (1) keep written financial records, (2) provide the Board with a list of all asset sales, and (3) provide the Board with a verified list of all assets.  The PRO also (4) prohibited Bannum from liquidating, selling, or otherwise dissipating its assets, unless Bannum paid the proceeds to the NLRB or had previously furnished security. *Id.* ¶¶ I, II.

---

[4]The full list included, "without limitation, land, vehicles, inventory, equipment, bank account numbers, certificates of deposit, promissory notes and/or other financial instruments personally registered to Respondents, shares of stock of which any of the Respondents are real or beneficial owners, bonds, options to purchase, good will or business licenses, and any other assets within the scope of this Order, together with a list of any encumbrances thereon, and shall update this list every time they dispose of, lease or acquire any asset(s) exceeding $500 in value." D. 55 (PRO ¶ VIII) (6th Cir. July 27, 2023).

Certain obligations under the PRO, namely the obligation to provide the Board with a list of asset sales and a verified list of assets, had a compliance deadline of ten days following the issuance of the PRO.  *See id.* ¶¶ VII, VIII.  August 7, 2023, marked the first business day ten days following the entry of the PRO.

On August 4, 2023, Bannum moved for modification of the PRO, D. 57 (Mot. Modify PRO) (6th Cir. Aug. 4, 2023), and, on August 11, 2023, we granted Bannum's motion in part, *NLRB v. Bannum, Inc.*, Nos. 21-2664/2690, 2023 WL 5167255 (6th Cir. Aug. 11, 2023) (order). Relevant here, we granted Bannum's motion to extend the time for compliance with Paragraphs VII and VIII of the PRO.  *Id.*  The modified PRO obligated Bannum to provide the Board with a list of all asset sales and a verified list of all assets by August 25, 2023.  *See id.*

On August 25, 2023, the extended deadline by which Bannum was obliged to provide the Board with its lists of assets and asset sales, Bannum failed to do so.  On that date,[5] Bannum sent the NLRB a "preliminary response to [the] requests for documentation in [the] Temporary Restraining Order."  D. 64-2 (Pet'r Att. 3: Prelim. Resp. at 1) (6th Cir. Jan. 22, 2024).  On the topic of assets and asset sales, the unverified "preliminary response" stated that (1) Bannum sold a Charleston, West Virginia property in November 2021 for $60,000, but "does not have or possess any proceeds from this sale," *id.* at 2; (2) Bannum sold a Wheeling, West Virginia property in February 2022 for $155,000 but "does not have or possess any proceeds from this sale," *id.*; (3) Bannum sold a Saginaw, Michigan property in July 2022 for $250,000 but "does not have or possess any proceeds from this sale," *id.*; (4) Bannum owns one piece of real property in Jackson, Mississippi that "has been on the market for the past 5-6 years," *id.* at 3; and (5) Bannum is involved in outstanding lawsuits in the United States Court of Federal Claims and one appeal in the Civilian Board of Contract Appeals, *id.*  Despite the PRO requiring "a verified list of all of [Bannum's] assets, real and personal, which exceed $500 in value," the "preliminary response" was not verified.  D. 55 (PRO ¶ VIII) (6th Cir. July 27, 2023).  Additionally, the "preliminary response" did not provide "a description of the . . . assets" sold, "the value of each

---

[5]The Board reported receiving this "preliminary response" via email on September 6, 2023.  D. 64 (Pet'r Br. at 8) (6th Cir. Jan. 22, 2024).  The preliminary response, however, was dated August 25, 2023.  *Id.*  Because we find that the response failed to satisfy the PRO, we need not determine the date it was sent.  We assume for the purposes of this opinion, but do not hold, that the preliminary response was sent on August 25, 2023.

asset at the time [Bannum] acquired it," "the subsequent disposition of the consideration" that Bannum received for the sale of the assets, nor "the name(s) and address(es) of all persons or entities who were parties to the transaction[s]." *Id.* ¶ VII(B).  Following the receipt of Bannum's "preliminary response," the Board repeatedly informed Bannum that the response was insufficient and failed to comply with the PRO.  *See* D. 64 (Pet'r Br. at 9–12) (6th Cir. Jan. 22, 2024); D. 64-2 (Pet'r Att. 4: NLRB letter) (6th Cir. Jan. 22, 2024).

In September 2023, Bannum's lawyers filed a motion to withdraw as counsel and we granted it.  D. 61 (Withdrawal Mot.) (6th Cir. Sept. 8, 2023); D. 62 (Withdrawal Order) (6th Cir. Sept. 12, 2023).  In October 2023, Frank T. Mamat notified the Board that he had been retained to represent Bannum and counsel began exchanging correspondence about Bannum's compliance—and non-compliance—with the PRO.  *See* D. 64 (Pet'r Br. at 10–11) (6th Cir. Jan. 22, 2024); D. 66 (Resp't Br. at 4–6) (6th Cir. Jan. 31, 2024).  On November 15, 2023, Bannum informed the Board that a Bannum agent "drove from Florida to Kentucky to examine what records there are available . . . .  [He found] some records going back to at least 2018 in a warehouse in Kentucky."  D. 64-2 (Pet'r Att. 8: Bannum Letter at 2) (6th Cir. Jan. 22, 2024).  Bannum further stated that "[t]here are over 18 boxes of these records," including "invoices, bills, cancelled checks, etc."  *Id.*  Bannum provided no other information about the content of the boxes, but stated that "[t]hey can be made available to the NLRB for . . . inspection or duplication or copying."  *Id.*

On December 21, 2023, the Board informed Bannum that its November 15, 2023 letter "does not satisfy the Court's order," and requested all "documentation as ordered under the PRO."  D. 64-2 (Pet'r Att. 9: NLRB Email) (6th Cir. Jan. 22, 2024).  The Board requested Bannum's "financial transaction records," "documentation detailing the allocation of funds from the sale of [the] various properties" that Bannum had identified, as well as bank account records and bank names.  *Id.*  The Board also asked Bannum whether "the records located in the Kentucky warehouse . . . include bank statements?"  *Id.*  On January 4, 2024, in the final correspondence prior to the initiation of the instant motion, Bannum informed the Board that "the warehouse that contained the documents was broken into in mid-December and the place was ransacked."  D. 64-2 (Pet'r Att. 10: Bannum Letter) (6th Cir. Jan. 22, 2024).  Bannum stated

further that it had "no idea of what was taken . . . it may only be material[] things and not paper." *Id.*  On January 22, 2024, the Board filed the instant motion to adjudicate Bannum in civil contempt of the protective restraining order and for spoliation sanctions.  D. 64 (Pet'r Br.) (6th Cir. Jan. 22, 2024).

## II.

"A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly 'violated a definite and specific order of the court.'" *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).  This requires clear and convincing evidence that (1) there is "a definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act or acts," (2) the defendant had "knowledge of the court's order," and (3) the defendant violated that order.  *Cincinnati Bronze*, 829 F.2d at 591 (quoting *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

It is undisputed that the PRO at issue was a definite and specific order of this court requiring Bannum to perform particular acts and prohibiting it from performing other particular acts.  *See* D. 66 (Resp't Br. at 7–9) (6th Cir. Jan. 31, 2024); D. 64 (Pet'r Br. at 14) (6th Cir. Jan. 22, 2024).  It is also undisputed that Bannum had notice and knowledge of the PRO.  *See* D. 66 (Resp't Br. at 7–9) (6th Cir. Jan. 31, 2024); D. 64 (Pet'r Br. at 14–15) (6th Cir. Jan. 22, 2024).  Bannum, moreover, does not argue that it fully complied with the PRO.  *See* D. 66 (Resp't Br. at 7–9) (6th Cir. Jan. 31, 2024).  Instead, Bannum merely argues that its alleged violation of the PRO is defensible—and does not warrant a civil contempt holding—because (1) "neither of the two reasons triggering the need for a civil contempt motion are present," *id.* at 7, and (2) Bannum has taken "reasonable steps to fully comply with the [PRO]," *id.* at 9.  We discuss Bannum's alleged "reasonable steps" first.

If the moving party in a civil contempt action demonstrates that the opposing party knowingly violated a definite and specific order of the court, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order."  *Elec. Workers Pension Tr. Fund of Loc. Union #58 v. Gary's*

*Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). The alleged contemnor "must show categorically and in detail why he or she is unable to comply with the court's order." *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The burden of proving impossibility of complying with an order "is difficult to meet." *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991) (quoting *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982)). Notably, a defendant's good-faith effort to comply with a court order is not a defense to a civil contempt action. *Id.*; *Peppers v. Barry*, 873 F.2d 967, 968–69 (6th Cir. 1989).

Because Bannum knowingly violated a definite and specific order of this court, Bannum now bears the burden of showing that it is "unable to comply" with that order. *Gary's Elec. Serv.*, 340 F.3d at 379. If Bannum can show that it "took all reasonable steps within [its] power to comply with the court's order," but is nonetheless unable to comply, we will not hold Bannum in contempt. *Peppers*, 873 F.2d at 969; *see also Gascho*, 875 F.3d at 802.

We are not convinced that Bannum "took all reasonable steps within [its] power to comply with the" PRO. *Peppers*, 873 F.2d at 969. Bannum argues that it took reasonable steps "when Mr. Rich traveled from Florida to Kentucky, identified 18 boxes of Bannum records, and offered to make all of them available to the Board." D. 66 (Resp't Br. at 8–9) (6th Cir. Jan. 31, 2024). According to Bannum, the identification of those eighteen boxes and offer to make them available to the Board indicates that Bannum "is actively working to comply" and "has taken reasonable steps in that regard." *Id.* at 3. Moreover, according to Bannum, "since at least October 2023," Bannum "inform[ed] the Board about the disposition of their assets, identif[ied] records responsive to the Order, and ma[de] those records available to the Board at the Board's convenience." *Id.* at 7.

Bannum's actions do not reflect "all reasonable steps within [Bannum's] power." *Peppers*, 873 F.2d at 969. Even if we were to assume that locating the eighteen boxes alone represented all reasonable steps towards complying with the PRO—a dubious proposition, as discussed below—Bannum failed to locate, or even attempt to locate those boxes until November 2023. *See* D. 64-2 (Pet'r Att. 7: Email Exchange at 2) (6th Cir. Jan. 22, 2024). Bannum was obligated, by August 25, 2023, to (1) provide the Board with a list of its asset sales since

September 28, 2017, and (2) provide the Board with a verified list of its assets.  D. 55 (PRO ¶¶ VII, VIII) (6th Cir. July 27, 2023); *Bannum, Inc.*, 2023 WL 5167255.  Bannum was thus required to take all reasonable steps to satisfy these obligations by August 25, 2023, not by some later date in November 2023.  As of August 25, 2023, however, Bannum had provided the Board only with its "preliminary response," which (1) did not claim to include a list of all asset sales dating back to September 2017, (2) did not claim to state all of Bannum's assets, and (3) was not verified.  D. 64-2 (Pet'r Att. 3: Prelim. Resp. at 1) (6th Cir. Jan. 22, 2024).

From August 25, 2023 until November 2023, there is no evidence that Bannum took *any* steps to comply with the PRO.  In November 2023, Bannum informed the Board that it found eighteen boxes that "contain[] records that are, or may be, responsive" to the PRO.  D. 66 (Resp't Br. at 5) (6th Cir. Jan. 31, 2024).  Stated otherwise, according to Bannum itself, these boxes *may* contain documents responsive to the PRO.  That means that these boxes *may not* contain such documents.  Finding eighteen boxes that may or may not contain responsive material, refusing to identify the documents therein, and thus failing to inform the Board what records are being made available, is not a reasonable means of complying with the PRO.

The extensive list of PRO requirements that Bannum has failed even to attempt to satisfy goes on.  The PRO, for example, requires that Bannum "furnish the NLRB with a verified list of all of their . . . bank account numbers" exceeding $500 in value, D. 55 (PRO ¶ VIII) (6th Cir. July 27, 2023), by August 25, 2023, *Bannum, Inc.*, 2023 WL 5167255.  Bannum has not provided the Board with its bank account numbers, nor even the names of its banks.  Bannum, moreover, fails to present any steps it has taken to provide those numbers to the Board.  Though calling a bank may elicit some of the information Bannum is required to provide the Board, there is no evidence Bannum has taken even that straightforward step.  The PRO also requires Bannum to inform the Board about the "disposition of the consideration" received in exchange for the sale of assets worth over $5,000.  D. 55 (PRO ¶ VII(B)) (6th Cir. July 27, 2023).  In its "preliminary response," Bannum stated that it sold three properties during the relevant period, but "does not have or possess any proceeds from [these] sale[s]."  D. 64-2 (Pet'r Att. 3: Prelim. Resp. at 2) (6th Cir. Jan. 22, 2024).  Bannum provides no information about the "disposition of the consideration" from these sales.  D. 55 (PRO ¶ VII(B)) (6th Cir. July 27, 2023).  Though

Bannum claims that it does not have the proceeds from these sales, it fails to inform the Board of where the proceeds went. Bannum fails even to state any steps it has taken—such as the obvious and simple step of calling a bank or a real estate agent—to collect this information. Bannum has failed to take *all* reasonable steps within its power; its haphazard and sorry attempts to fulfill its obligations under the PRO are woefully inadequate. Bannum's actions are, at best, a failure to take all reasonable steps to comply with the PRO and, at worst, intentional and flagrant obfuscation. In either case, contempt is warranted.

Bannum also argues that it should not be held in contempt because "neither of the two reasons triggering the need for a civil contempt motion are present." D. 66 (Resp't Br. at 7) (6th Cir. Jan. 31, 2024). Civil contempt sanctions may "be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Gary's Elec. Serv.*, 340 F.3d at 379 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). Both purposes of civil contempt sanctions are present here. Bannum continues to evade its obligations under the PRO. To this day, Bannum has, at a minimum, failed to provide the Board with (1) "the value of each asset" sold, (2) "the subsequent disposition of the consideration" it received for assets sold, (3) the names and addresses of individuals "who were parties to the transaction[s]" with Bannum, and (4) a verified list of its assets. D. 55 (PRO ¶¶ VII, VIII) (6th Cir. July 27, 2023). This list is demonstrative of Bannum's continued *gross failure* to comply with its obligations. Bannum has demonstrated that it is unwilling to comply with this court's orders; coercion into compliance is thus appropriate. The Board, furthermore, faced additional litigation costs "caused in major part by the refusal of the Defendant[] to tender documents required to be disclosed to the [Board] by the [PRO]." *Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 391 (6th Cir. 2012) (per curiam). Compensation for those added costs is therefore appropriate.

Because we hold that adjudicating Bannum in civil contempt is warranted under these circumstances, we now turn to the appropriate contempt sanctions. The Board argues that Bannum should be required to "reimburse the [Board] for its costs and attorney fees." D. 64 (Pet'r Br. at 18) (6th Cir. Jan. 22, 2024). The Board also argues that we should "impose a

suspended fine . . . to be executed in the event of any further noncompliance by [Bannum], as a remedy for their failure to purge themselves from civil contempt." *Id.*

As our sibling circuit recently explained:

In crafting a remedy, we must keep in mind the dual purposes of civil contempt: (1) to coerce the party in contempt into compliance, and (2) to compensate the complainant for losses caused by the defendant's noncompliance. Therefore, the remedy we impose must be sufficient to bring [the contemnor] into compliance, and also must accord full remedial relief. In short, the nature and extent of the contumacious conduct determines the nature and extent of the remedy.

*NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1054–55 (7th Cir. 2023) (internal quotation marks and citations omitted); *see also Gary's Elec. Serv.*, 340 F.3d at 379.

"It is well settled that costs may be awarded as a . . . part of the remedy to which the complainant is entitled in successfully prosecuting a civil contempt proceeding." *NLRB v. Lynair, Inc.*, 380 F.2d 286, 289 (6th Cir. 1967). An award of attorney fees, moreover, "is appropriate for civil contempt in situations where court orders have been violated." *Spurr v. Pope*, 936 F.3d 478, 487–88 (6th Cir. 2019) (quoting *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000)). Costs and attorney fees are appropriate in this case to compensate the Board for the expenditures incurred due to Bannum's noncompliance. *See Neises Constr.*, 62 F.4th at 1057 (citing cases that awarded both costs and attorney fees for civil contempt). "[I]n order to assure against future violations of the [PRO] and this order," we will also impose a prospective, suspended fine on Bannum for any future "failure to abide by the [PRO] or this order." *NLRB v. Ketronic, Inc.*, 129 F.3d 1264 (6th Cir. 1997) (per curiam) (unpublished). Given Bannum's repeated contumacious conduct, as detailed above, costs, attorney fees, and a suspended fine are appropriate contempt sanctions.

**III.**

The Board also seeks sanctions for alleged spoliation of evidence. Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004). Sanctions for spoliation "should serve both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650,

652 (6th Cir. 2009) (en banc). "[T]he severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652–53. There are "many different kinds of sanctions for spoliated evidence, including . . . instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* at 653.

The Board argues that this court should impose spoliation sanctions against Bannum "for failing to preserve relevant information." D. 64 (Pet'r Br. at 19) (6th Cir. Jan. 22, 2024). To explain what "relevant information" was not preserved, the Board points to the eighteen boxes of documents that were "in a warehouse not even in the same state as [Bannum's] principal officer . . ., and that evidently lacked appropriate security." *Id.* at 22. The Board specifically "requests sanctions in the form of an adverse inference that the evidence lost would have revealed transfers of [Bannum's] assets to its insiders." *Id.* at 19–20. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

Implicit in spoliation is the requirement that the evidence be actually lost or destroyed. *See Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804–05 (6th Cir. 1999) (explaining that under Ohio law there is no spoliation of evidence when the evidence is not "spoiled" or destroyed), *overruled on other grounds by Adkins*, 554 F.3d 650 (holding that federal law applies to spoliation sanctions). Though the Board has demonstrated that the relevant evidence has not been produced as required by the PRO, the Board does not demonstrate that the evidence has been lost or destroyed. As noted above, the eighteen boxes at issue contain unidentified "records that are, or may be, responsive" to the PRO. D. 66 (Resp't Br. at 5) (6th Cir. Jan. 31, 2024); *see also* D. 67 (Pet'r Reply Br. at 7) (6th Cir. Feb. 7, 2024). These boxes that may or may not contain responsive documents, furthermore, may or may not have been affected by the warehouse break-in. *See* D. 64-2 (Pet'r Att. 10: Bannum Letter) (6th Cir. Jan. 22,

2024) ("[We have] no idea of what was taken at this time (it may only be material[] things and not paper) . . . ."). In sum, it is entirely unclear at this time whether evidence was actually destroyed or lost. Absent evidence that these records were actually spoiled, spoliation sanctions are inappropriate. Given Bannum's continued contumacious conduct, detailed above, however, we caution Bannum that, given sufficient evidence of the destruction or loss of evidence, spoliation sanctions may be appropriate in the future.

**IV.**

For the foregoing reasons, we **GRANT** the Board's motion to adjudicate Bannum in civil contempt and **DENY** without prejudice the Board's motion for spoliation sanctions. We issue the attached order in accordance with this opinion.

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

*v.*

BANNUM, INC. and BANNUM PLACE OF SAGINAW, LLC, a single employer and/or joint employers and/or a Parent Corporation,

*Respondents.*

Nos. 21-2664/2690

---

On Motion to Adjudicate Respondents in Civil Contempt
of Protective Restraining Order and for Spoliation Sanctions
Nos. 07-CA-207685; 07-CA-211090; 07-CA-215356.

Decided and Filed:  February 23, 2024

Before:  MOORE, COLE, and NALBANDIAN, Circuit Judges.

---

## ORDER

---

Upon consideration of the National Labor Relations Board's (the "NLRB") Motion to Adjudicate Respondents in Civil Contempt of Protective Restraining Order ("PRO") and for Spoliation Sanctions for having failed to comply with this Court's July 27, 2023 PRO, and for their spoliation of relevant evidence:

**IT IS ORDERED** that the NLRB's Motion is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Bannum, Inc. and Bannum Place of Saginaw, LLC ("Bannum") (jointly referred to as "Respondents") be held in civil contempt for failing to comply with this Court's July 27, 2023 Order.

**IT IS FURTHER ORDERED** that Respondents, their officers, agents, successors, and assigns shall:

> (a)       Fully comply with the PRO, and not in any way, by action or inaction, engage in, induce, encourage, permit, or condone any violation of said PRO;
>
> (b)       Within thirty days after service upon Respondents of this court's adjudication of contempt in this matter, fully and completely produce the information mandated to be produced under the PRO. This includes Respondents fully securing, reviewing, and producing the information responsive to the PRO that is located in the eighteen boxes held in the Kentucky warehouse. Service of this Order is to be accomplished by forwarding a copy to Respondents' counsel of record by regular mail, certified mail, overnight delivery or by electronic mail, with proof of delivery.
>
> (c)       File sworn statements, under penalty of perjury, with the Clerk of this Court, and a copy thereof with the NLRB's Contempt, Compliance, and Special Litigation Branch (1015 Half Street, S.E., Washington, District of Columbia, 20003, Attn: Attorney Shawnell Barnett), within forty-five days after entry of the contempt adjudication and again upon termination of compliance, showing what steps have been taken to comply with this court's directives.

**IT IS FURTHER ORDERED** that, upon the further motion of the NLRB showing that Respondents have failed to purge themselves of contempt, this court shall impose a fine of up to $100 per day for the duration of the period that the violation has continued against any officer, agent or representative of Respondents that this court finds to have had notice and knowledge of this Order and to have failed to cause Respondents to comply with this Order, with the amount of the fine to be imposed by this court depending upon the scope and severity of the violations.

**IT IS FURTHER ORDERED** that Respondents be ordered to pay to the NLRB all costs, expenses and reasonable attorney fees, calculated at the prevailing market rate in Washington, D.C., incurred by the NLRB in the investigation, preparation, presentation, and final disposition of this motion.  All of said costs, unless agreed to by the parties, shall be fixed by further order of this court upon submission by the NLRB of a certified statement of such costs and expenses.

**IT IS FURTHER ORDERED** that within thirty days of this Order, Respondents shall each produce to the NLRB a complete and final list of their officers, directors, shareholders, and any other insiders of those companies within the meaning of 11 U.S.C. § 101(31)(B), attested to under penalty of perjury.

**IT IS FURTHER ORDERED** that this court shall take such other actions and grant such other relief as may be just, reasonable, and proper to remedy Respondents' contempt of court and any subsequent violations of this or any prior Order of this court.

It is so ORDERED this 23rd day of February 2024.

ENTERED BY ORDER OF THE COURT

_____
Kelly L. Stephens, Clerk